St. Louis, Indianapolis and Eastern Railroad Co.

*v.*

Uriah Warfel.

*Filed at Mt. Vernon November 11, 1896.*

1. Appeals and Errors —*objections cannot be first raised on appeal.* An objection that a deed offered in evidence does not sufficiently describe the premises, not made at trial, comes too late on appeal.

2. Evidence—*insufficiency of proof of deed by which plaintiff in ejectment derives title.* Plaintiff in ejectment relying for title on a deed purporting to be from the widow and heirs of a former owner, must prove that such former owner died intestate, and that the parties to the deed were in fact the widow and heirs-at-law of the deceased.

3. Taxes—*payment of, by owner of paramount title—subsequent payments by others.* Where the owner of the paramount title pays the taxes on a tract of land the tax is extinguished, and any subsequent payment by a person under color of title is a nullity.

4. Limitations—*defense of seven years' possession to action of ejectment.* Where a strip of land embraced in a larger tract is assessed as railroad track to a railroad company in possession under color of title, which pays the taxes thereon for seven successive years, the fact that plaintiff in ejectment made a prior payment of the taxes upon the entire tract for some of the years will not affect the company's defense of the Statute of Limitations.

Writ of Error to the Circuit Court of Jasper county; the Hon. S. Z. Landes, Judge, presiding.

Gibson & Johnson, for plaintiff in error.

Fithian & Davidson, for defendant in error.

Mr. Justice Craig delivered the opinion of the court:

This was an action of ejectment, brought by Uriah Warfel, against the St. Louis, Indianapolis and Eastern Railroad Company, to recover a strip of land eighty feet wide, commencing at the south-east corner of the south-east quarter of section 30, township 7, north, range 9, east of the third principal meridian, in Jasper county, Illinois, extending thence in a northwesterly direction across said subdivision to the north-west corner of said subdivision. The parties, by agreement, waived a jury, and a trial was had before the court, resulting in a judgment in favor of the plaintiff.

It appears from the record that the parties stipulated that the cause might be tried on abstracts of deeds and records in the place of the original deeds. Under this stipulation the counsel for the plaintiff put in evidence an abstract of title which showed that the south-east quarter of section 30, township 7, north, range 9, east of the third principal meridian, in Jasper county, Illinois, was entered by Daniel Paulus on September 6, 1852. The abstract also showed a conveyance of the quarter section from Daniel Paulus and wife to William Marsh on February 3, 1858. The abstract also showed a deed dated March 20, 1893, which purported to be from the widow and only heirs of W. Marsh, deceased, to Uriah Warfel, the plaintiff, conveying the quarter section of land. The description of the land in the deed from Paulus to Marsh was defective, "township 7, north," having been omitted, and had the deed been objected to when it was offered in evidence on the ground the land was not properly described, the deed might have been excluded. But no objection was made to the introduction of the instrument in evidence on the ground that the land was not prop-

erly described, and the objection, when made for the first time on appeal, comes too late. If the defendant desired to rely on the objection on appeal, good faith required that it should make the objection on the trial, in order that the plaintiff might introduce other evidence to remove the objection. As it failed to do so the objection may be regarded as waived.

It will be observed that Daniel Paulus, who entered the land, conveyed to William Marsh, and as the plaintiff claimed title from the widow and heirs of William Marsh it devolved on him to prove that William Marsh died intestate, and that the persons who conveyed to him were the widow and heirs-at-law of William Marsh. This was not proven. The plaintiff read in evidence a deed which purported to be executed by the widow and heirs of W. Marsh. But that was not sufficient. He was bound to go further, and prove the death of William Marsh, and that the persons who signed the deed were the heirs-at-law and widow of said Marsh. As plaintiff failed to establish this fact he did not show title to the land, and for this reason, if for no other, he was not entitled to recover.

But it will not be necessary to rest the decision of the case upon this ground alone. The defendent, on the trial in the circuit court, relied as a defense upon color of title and seven successive years' possession and payment of taxes. For the purpose of establishing this defense the defendant proved that on or about the 20th day of July, 1880, the Springfield, Effingham and Southeastern Railroad Company entered into a contract with one Pierpont, who was then residing on the quarter section of land and who claimed to be the agent of William Marsh, for a strip of land two rods wide over and across the land; that after this contract was made the railroad was constructed over and across the land. The defendant then read in evidence as color of title a deed from the Springfield, Effingham and Southeastern Railroad Company to the Indiana and Illinois Southern Railroad Company, con-

veying the railroad as located in Jasper and other counties. The defendant also read in evidence a deed from the master in chancery to William Alley, trustee, dated February 3, 1890; also a deed from Alley to defendant, dated February 6, 1890. The defendant then put in evidence a railroad tax-book of Jasper county, which contained the following on page 61: "List of taxable property belonging to the Indiana and Illinois Southern Railroad Company in the county of Jasper and State of Illinois, and the taxes levied thereon for the year 1885.— What kind of property: Railroad track; a strip of land extending on each side of said railroad track, and embracing the same, together with all the stations and improvements thereon, commencing at the point where said railroad crosses the east boundary line of Jasper county in entering said county, and extending to the point where said track crosses the west boundary line of said Jasper county in leaving the same, containing twenty-four miles. Total tax: $812.61." The defendant proved a like assessment of its railroad property in Jasper county for the years 1886, 1887, 1888, 1889, 1890, 1891, 1892 and 1893. The evidence also showed payment of taxes embracing the strip of land in controversy by the defendant and its grantor, uninterruptedly, from 1885 to 1892, inclusive,— a period of eight years. The evidence also disclosed that the possession of the right of way conveyed by the deed was continuous in the defendant and its grantor from January, 1883, until the commencement of the action of ejectment,—a period of more than seven years.

The statute (Hurd's Stat. 1895, chap. 83, sec. 6,) provides: "Every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall for seven successive years continue in such possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the

purport of his or her paper title." The deed from the Springfield, Effingham and Southeastern Railroad Company to the Indiana and Illinois Southern Railroad Company, bearing date January 27, 1883, was good color of title. The evidence sufficiently establishes defendant's possession under the color of title for the period required by the statute to create a bar.

The only remaining question is in regard to the payment of taxes. The railroad company paid its taxes on its railroad property in Jasper county, including the strip of land occupied as a right of way on the quarter of land in question, each year from 1885 to 1893,—a period of more than seven years,—and it is plain that this would be a sufficient compliance with the statute to establish a title under the Limitation law if the owner of the other title had done nothing during the seven years to arrest the running of the statute. It is, however, claimed that the owner of the other title, for several of the years relied upon by defendant, paid the taxes on the land before payment was made by the railroad company, and hence the payment by the railroad company was of no avail. Where the owner of the paramount title pays the taxes on a tract of land the tax is extinguished, and any subsequent payment by a person holding color of title or any other title will be treated as a nullity. This rule is settled by *Morrison* v. *Kelly*, 22 Ill. 609, and *Ross* v. *Coat*, 58 id. 53. When the taxes have been paid the burden created by the tax is removed from the land. There is then no tax resting on the land to be paid, and an attempt to make a second payment is a nullity. The question to be determined, then, is whether the owner of the paramount title did make payment before payment was made under color of title.

It appears that the owner paid on the south-east quarter of section 30, township 7, north, range 9, east, and took a receipt for payment on the entire quarter. In this way it is claimed that payment was made on the entire

quarter, including the strip of land occupied by the railroad company as right of way. We do not, however, concur in this view. The strip of land occupied by the railroad company was assessed as railroad track, and the taxes growing out of the assessment thus made were paid each year by the railroad company. The strip of land, as to its assessment and taxation and payment of taxes, was separated and removed from the quarter section of land of which it was a part, and although the owner of the paramount title, in the payment of taxes, obtained a receipt for the whole quarter, he in fact paid no taxes on that part of the quarter occupied by the railroad company as right of way. Our conclusion therefore is, that as to the strip of land actually occupied by the railroad company for seven successive years the evidence introduced by the defendant was sufficient to defeat a recovery under the Statute of Limitations.

The judgment will be reversed and the cause will be remanded.

*Reversed and remanded.*